Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| ROSA LYDIA VÉLEZ Y OTROS **Recurridos** V. DEPARTAMENTO DE EDUCACIÓN DE P.R. Y OTROS **Peticionarios** | KLCE202500011 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Jun<br><br>Caso Núm: K PE1980-1738<br><br>Sobre: Injunction-clásico |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

**Hernández Sánchez, Juez Ponente**

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de enero de 2025.

El 3 de enero de 2025, el Gobierno de Puerto Rico por sí y en representación del Departamento de Educación de Puerto Rico (DEPR o peticionario) compareció ante nos y solicitó la revisión de una *Resolución del Comisionado* que se emitió y notificó el 12 de agosto de 2024 por el Comisionado Especial asignado al presente caso, el Lcdo. Carlos Rivera Martínez (licenciado Rivera o el Comisionado). Mediante el aludido dictamen, el Comisionado resolvió que el proceso de corroboración reflejó que los datos presentados por el DEPR en los informes de cumplimiento no mantuvieron en la corroboración un nivel de cumplimiento de 3.5 o más. Así pues, sostuvo que el DEPR no evidenció fehacientemente el cumplimiento con todos los criterios de las estipulaciones 4 y 12. En vista de ello, determinó que se recomendaba la reactivación de las referidas estipulaciones conforme lo solicitó la Monitora en sus Informes Finales de corroboración de las referidas estipulaciones.

I.

Este pleito tiene su origen en una Demanda de Injunction Preliminar y Permanente y Daños que se presentó el 14 de

Número Identificador

RES2025 _____

noviembre de 1980 por un grupo de padres y madres de estudiantes del Programa de Educación Especial (PEE) en contra del Departamento de Instrucción Pública, conocido actualmente como el Departamento de Educación de Puerto Rico.[1] En esta, alegaron que el entonces Departamento de Instrucción Pública no les brindaba los servicios de educación especial garantizados por las leyes estatales y federales, consistentes en identificar y localizar los menores con diversidad funcional, evaluarlos, discutir las evaluaciones con sus padres, preparar un plan educativo individualizado y ubicarlos en centros para recibir servicios. El 10 de septiembre de 1981, el caso fue certificado como un pleito de clase, la cual incluyó a:

> "todos los niños con impedimentos menores de 21 años elegibles o participantes en el Programa de Educación Especial del Departamento de Instrucción Pública a quienes los demandados [peticionarios] no les están proveyendo la educación especial y servicios relacionados que les garantiza la legislación de educación especial".

Además, en esa misma fecha, el TPI emitió un *injunction* preliminar en el que dispuso que el DE estaba obligado a:

1. Evaluar a los niños/as con inhabilidades que en adelante fueran registrados en el Programa de Educación especial, y ubicar los mismos en un periodo de sesenta días a partir de la fecha del registro. Dicha ubicación incluía proveerle todos los servicios educativos y relacionados.

2. En cuanto a los miembros de la clase que a la fecha de la orden estaban registrados en el programa, pero no estaban recibiendo servicios, ordenó que fueran evaluados en un plazo de sesenta días a partir de la Orden y que comenzaran a recibir los servicios educativos relacionados en un plazo de noventa días.

3. Ordenó al Departamento a implementar un programa de divulgación periódico y continuo para orientar a los padres/madres de niños y niñas con inhabilidades, mediante programas y cuñas radiales sobre los derechos de los miembros de la clase a recibir educación especial y servicios relacionados. Los maestros del sistema público también debían ser

---

[1] Estos hechos procesales se acogen de una *Resolución* que dictamos el 10 de marzo de 2022 en el caso núm. KLCE202101437 consolidado con el KLCE202200031.

orientados al respecto, de conformidad con la Orden del Tribunal.

4. [...] proveer todos los servicios dispuestos por la legislación federal y de Puerto Rico.

Posteriormente, con el propósito de auxiliar en la implementación de la orden de *injunction,* el TPI nombró a un Comisionado Especial. Luego, nombró a una Monitora, a quien se le delegó la tarea de velar por el cumplimiento del procedimiento administrativo de querellas, los términos legales para su resolución y, a su vez, dar seguimiento y monitoría al remedio provisional. Así, tras varios asuntos que no son necesarios detallar, el 14 de febrero de 2002, el TPI emitió *Sentencia Parcial* por estipulación. Mediante su dictamen, aprobó ochenta y siete (87) estipulaciones suscritas por las partes, relacionadas con la prestación de servicios de educación especial a los componentes de la clase. A su vez, en esa misma fecha, el tribunal autorizó el inicio de un programa de monitoría, que obliga al DEPR a rendir informes periódicos sobre el cumplimiento con las estipulaciones relacionadas a la prestación de servicios a los miembros de la clase.

Ahora bien, en lo pertinente a la controversia ante nos, el 1 de diciembre de 2023, el TPI emitió una *Resolución Archivo Administrativo Nunc Pro Tunc* que se notificó el 5 de diciembre de 2023.[2] Cabe precisar que, este dictamen originalmente se emitió el 29 de septiembre de 2023. Sin embargo, se enmendó a los únicos fines de cambiar el nombre del documento de Sentencia Parcial a Resolución por lo que no se alteró la decisión original. Por lo tanto, en este dictamen, el TPI acogió las recomendaciones realizadas por el comisionado especial, el Lcdo. Carlos Rivera Martínez, y las conclusiones de la monitora, la Dra. Pilar Beléndez Soltero (doctora Beléndez o la Monitora) y, en consecuencia, ordenó el archivo

---

[2] Véase, págs. 25-47 del apéndice del recurso.

administrativo de once (11) estipulaciones[3] de la *Sentencia Parcial* que se emitió el 14 de febrero de 2002. Es pertinente resaltar que, mediante este dictamen, el TPI claramente expresó que se reservaba la jurisdicción para decretar la reapertura de las estipulaciones archivadas y los requerimientos de información si en el proceso de corroboración se reflejaba una realidad de cumplimiento distinta a los datos e información suplidos que dieron base al cierre administrativo.

Posteriormente, la parte peticionaria alegó que, el 27 de noviembre de 2023, la monitora realizó un *Informe Final de la Monitoria de la Estipulación 12* y el 11 de marzo de 2024 *un Informe Final de la Monitora sobre la Corroboración de la Estipulación 4*. Ante ello, el Comisionado le concedió un término al DEPR para que se expresara en cuanto a los referidos informes. Así pues, el 2 de abril de 2024, el DEPR presentó una *Posición del DEPR sobre el Informe* [...] solicitando que se dejara sin efecto las recomendaciones sobre la apertura de la Estipulación 4 y la 12 por entender que la normativa utilizada había sido errónea. La clase replicó a este escrito y el DEPR presentó su respectiva dúplica.[4]

Así las cosas, el 10 de julio de 2024, la Monitora del presente caso presentó una *Posición de la Monitora* [...] en la cual explicó los criterios que se utilizan tanto para recomendar el archivo administrativo de las estipulaciones como para, luego de la corroboración, reafirmar el archivo administrativo o recomendar que se reactiven las estipulaciones.[5]

Evaluados los escritos antes expuestos, el 12 de agosto de 2024, el Comisionado emitió y notificó una *Resolución del Comisionado*.[6] En este dictamen resolvió que el proceso de

---

[3] Las estipulaciones archivadas fueron las siguientes: 4, 9, 12, 13, 16, 18, 20, 27, 28, 58 y 59.
[4] Véase, págs. 63-101 del apéndice del recurso.
[5] Íd., págs. 102-103.
[6] Íd., págs. 1-19.

corroboración reflejó que los datos presentados por el DEPR en los informes de cumplimiento no mantuvieron en la corroboración un nivel de cumplimiento de 3.5 o más. Así pues, sostuvo que el DEPR no evidenció fehacientemente el cumplimiento con todos los criterios de las estipulaciones 4 y 12. En vista de ello, determinó que se recomendaba la reactivación de las referidas estipulaciones conforme lo solicitó la Monitora en sus Informes Finales de corroboración de las referidas estipulaciones.

En desacuerdo con este dictamen, el 3 de septiembre de 2024, el DEPR presentó una *Solicitud de Reconsideración; de Auxilio de Tribunal y de Vista Argumentativa.*[7] En esta, le solicitó al TPI a que revirtiera la orden sobre la reapertura de las estipulaciones 4, 12, y 20. Además, le solicitó que emitiera una orden para paralizar el proceso de corroboración individual que se estaba realizando hasta tanto se tuviese un Plan de Corroboración Final. Por último, que se señalara una vista argumentativa para aclarar y discutir todo lo relacionado al asunto de las estipulaciones. El 9 de octubre de 2024, la clase presentó una oposición a la solicitud de reconsideración y el 25 de octubre de 2024, el DEPR replicó a esta oposición.[8] Evaluados los escritos, el 27 de noviembre de 2024, el TPI emitió una *Resolución* que se notificó el 4 de diciembre de 2024 en la cual resolvió lo siguiente[9]:

> **NO HA LUGAR** la Solicitud de Reconsideración presentada por el Departamento de Educación el 3 de septiembre de 2024. Se **CONFIRMA** la Resolución emitida el 12 de agosto de 2024 por el Comisionado, el Lcdo. Carlos Rivera Martinez en cuanto a las objeciones presentadas por la parte demandada y, por consiguiente, se **ORDENA** la reactivación de la obligación del Departamento de Educación de la presentación de datos e información que evidencie de manera fehaciente el cumplimiento con todos los criterios de las **ESTIPULACIONES 4 y 12**, según recomendado por la Monitora, Sra. Pilar Beléndez Soltero.

---

[7] Íd., págs. 104-129.
[8] Íd., págs. 326- 359 y págs. 364-384.
[9] Íd., pág. 22.

Aún inconforme, el 3 de enero de 2025, el DEPR presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

**Erró el Honorable Tribunal de Primera Instancia (TPI) al declarar No Ha Lugar la Solicitud de Reconsideración instada por el DEPR a pesar de que las normas o reglas que se utilizaron por la OM para emitir los *Informes de Corroboración* de varias de las estipulaciones archivadas, y que dieron base a solicitar la reapertura de las Estipulaciones 4, 12, y 20, no son parte del caso de marras ni de las disposiciones regulatorias que le rigen, incluyendo al *Plan de Monitoria* vigente, el PMA 2019.**

**Erró el Honorable Tribunal de Primera Instancia (TPI) al no atender los señalamientos que se trajeron ante su atención, ya que conforme a ello se permite que la Monitoria del caso:**

**a) Pueda enunciar, promulgar y modificar las normas que regulan el archivo y reapertura de las estipulaciones del caso de epígrafe, sin consideración a las formalidades que se requieren como parte de un proceso regulatorio formal, sin voz ni participación de las partes, menos aún autorización previa del Tribunal, en fin, de los postulados básicos del debido proceso de ley.**

**b) Pueda determinar normas que se sobrepongan a la normativa jurisprudencial dispuesta por el Tribunal Supremo de los Estados Unidos y acogida por el Poder Judicial de Puerto Rico, la cual dispone que, con un <u>cumplimiento satisfactorio</u>, y no de perfección, de las áreas sobre las cuales se solicita cese de la supervisión judicial, es suficiente para el archivo administrativo de las estipulaciones. *Freeman v. Pitts*, 503 US 467.**

**c) Pueda adoptar e incorporar en el caso normas adicionales que no le apliquen ni le cobijen, y mediante lo cual se haga mucho más arduo y oneroso, o inclusive se imposibilite el archivo de las estipulaciones, reabriendo el camino para que el caso se continue indebidamente perpetuando por muchas décadas más.**

Atendido el recurso, el 13 de enero de 2025, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida hasta el 21 de enero de 2025 para presentar su postura en cuanto al recurso. Oportunamente, la señora Vélez presentó su *Oposición a Certiorari* y negó que el TPI cometiera los errores que el DEPR le

imputó. Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público;

y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto post-sentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

### III.

En primer lugar, debemos señalar que en el presente recurso se recurre de unas *Resoluciones* atinentes a asuntos post sentencia, las cuales no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria evaluadas al amparo de la Regla 52.1 de Procedimiento Civil, *supra.* En vista de ello, nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.*

Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o post-sentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones